UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Eric Fields,　　Plaintiff,　　v.　　THE BI-STATE DEVELOPMENT AGENCY OF THE MISSOURI-ILLINOIS METROPOLITAN DISTRICT, et al.,　　Defendants. | Case No. 4:14 CV 1321 RWS |

# **MEMORANDUM & ORDER**

Defendant Bi-State Development Agency ("Bi-State") moves for summary judgment in this False Claims Act case. [No. 207]. According to Relator Eric Fields, Bi-State falsely certified that it was in compliance with the Hatch Act, 5 U.S.C. §§ 7321-7326, and the Uniform Relocation Act[1], 42 U.S.C. § 4601, et seq., to obtain federal funds for its operations and capital improvements. Specifically, Fields argues that Bi-State purchased the Meridian Garage (the "Meridian") without an appraisal, as required by the Uniform Relocation Act, to benefit a political contributor. However, after four years, Fields fails to provide any evidence of false certifications made during or after Bi-State's negotiation and

---

[1] The Uniform Relocation Assistance in Real Property Acquisition Policies Act of 1970.

purchase of the Meridian in December 2010. Bi-State could not have knowingly submitted a false certification concerning Uniform Relocation Act compliance before that time. Additionally, Fields fails to provide any admissible evidence demonstrating that alleged Hatch Act violations occurred before or during the time that Bi-State made certifications concerning Hatch Act compliance. As a result, I will grant Bi-State's motion for summary judgment.

## BACKGROUND

Fields is a former employee of Bi-State who filed this False Claims Act suit on July 28, 2014. Fields claims that former CEO of Bi-State, Bob Bear, directed employees to participate in partisan campaigns and instituted a "pay to play" scheme in violation of the Hatch Act. Fields alleges that Bear provided favorable treatment to businesses and persons that contributed to Charley Dooley's re-election campaign and Citizens for Modern Transit. Fields also alleges that Bi-State violated the Uniform Relocation Act when it purchased Eager Road Associates, LLC's ("Eager Road") remaining one-third interest in the Meridian parking garage. The Meridian is adjacent to Bi-State's Brentwood I-64 Metrolink light rail station. This parking garage was constructed as part of the Cross-County Extension of Metrolink according to a letter from a prior CEO of Bi-State. (See Larry Salci Memorandum, ECF Doc No. 222-2 at p. 48).

Fields alleges that Bi-State made false certifications to the federal government when it acquired funding for the Cross-County Extension. In support of his complaint, Fields identifies federal grants received by Bi-State between 2006 and 2009 authorized under the American Recovery and Reinvestment Act (ARRA), the Congestion Mitigation Air Quality (CMAQ) program, and section 5307 of U.S. Code Title 49. (No. 221 at 10-11). Fields alleges that, as a condition of obtaining these funds, Bi-State submitted certifications that it was in compliance with federal statutes as outlined in the Federal Transit Agency's (FTA) master agreement. (Id. At 4-5). In contrast, Bi-State purchased the Meridian with local funds alone. Specifically, Bi-State allocated funds from a one half percent sales tax. As approved by local voters in 2010, Proposition M increased that sales tax from one quarter of a percent to one half percent.

Fields does not dispute that Bi-State used Proposition M funds as the direct source of funding for this purchase.[2] Instead, his underlying claim is that Bi-State failed to disclose that it violated federal law in its federal grant certifications (ARRA, CMAQ, § 5307). Specifically, Fields claims that Bi-State violated the Hatch Act by requiring employees to contribute to political campaigns and by

---

[2] In his statement of facts, Fields states, without reference to any testimony or documents, that "Proposition M funds were used to purchase the Meridien [sic] Garage, provide non-Federal match for Federal grants, and support Metro Operations in St. Louis City and St. Louis County, Missouri." (No. 222 at ¶ 20). Fields argues that Bi-State "commingle[d]" these local funds with "Federal funds out of multiple accounts," but he offers no evidence to support this assertion nor any precedent demonstrating that such "commingling" constitutes a claim for payment to the federal government. (No. 221 at 1).

3

instituting a "pay to play" scheme. Fields also alleges that Bi-State violated the Uniform Relocation Act by failing to conduct an appraisal before purchasing Eager Road's interest in the Meridian. Fields does not identify when Bi-State made certifications under ARRA, CMAQ, and § 5307, but he indicates that these federal funds were received for the Cross-County Extension between 2006 and 2009.

Bi-State previously filed two motions for summary judgment in this case arguing that it did not qualify as a "person" that can be sued under the False Claims Act, [No. 44] and that it was protected by sovereign immunity, [No. 115]. I denied these motions. U.S. ex rel. Fields v. Bi-State Dev. Agency of the Missouri-Illinois Metro. Dist., No. 4:14 CV 1321 RWS, 2015 WL 5158398, at *15 (E.D. Mo. Sept. 2, 2015); 2016 WL 4944097, at *3 (E.D. Mo. Sept. 16, 2016). The Eighth Circuit affirmed my ruling because Bi-State is comparable to a local government entity rather than a state agency. 872 F.3d 872 (8th Cir. 2017), cert. denied sub nom., 138 S. Ct. 677, (2018) (citing Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp., 948 F.2d 1084, 1086 (8th Cir. 1991)).

Bi-State now moves a third time for summary judgment, on the basis that Fields has provided no evidence that it submitted a false certification to the federal government.

## LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Med. Ctr., 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of identifying the basis of its motion and those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotext Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party makes and supports such a motion, the nonmoving party may not rest on his pleadings. Id. at 324. Instead, the nonmoving party must produce sufficient evidence to support the essential elements on which he bears the burden of proof. Id. at 324.

## ANALYSIS

In support of its motion for summary judgment, Bi-State argues that it only used local (Proposition M) funds to purchase the Eager Road's interest in the Meridian Garage. It provides an affidavit from its Chief Financial Officer Kathy S. Klevorn stating that Bi-State withdrew $6,000,000 from its Proposition M account. (No. 209-1 at ¶ 9). The affidavit states that $5,860,000 of those funds were wired to Touchstone Title for the purchase itself, fully accounting for the purchase cost.

5

(Id.) On this basis, Bi-State argues that it did not make any claim for payment to the federal government, within the meaning of the False Claims Act.

False Claim Act liability arises when a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the federal government. 31 U.S.C. § 3729(a)(1). The knowledge requirement can be met if a defendant acts with "actual knowledge", "deliberate indifference," or "reckless disregard" of the truth. 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). The false or fraudulent requirement can be met when a defendant "certifie[d] compliance with a statute or regulation as a condition to government payment," yet had knowingly failed to comply with such statute or regulation. U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc., 543 F.3d 1211, 1217-18 (10th Cir. 2008) (distinguishing claims of "factual falsity" where a defendant submits "an incorrect description of goods or services provided" and "legal falsity" where a defendant certifies compliance).

Normally this type of "legal falsity" claim arises when a defendant certifies that it is in compliance with certain federal laws, but the defendant has already violated those laws. See id. Under this "express false certification theory" a defendant who "falsely certifies compliance with a particular statute, regulation[,] or contractual term," is liable "where compliance is a prerequisite to payment." Mikes v. Straus, 274 F.3d 687, 698 (2d Cir. 2001). Under the "implied false certification theory," in contrast, the defendant may be in compliance with the

relevant laws at the time of certification. But the defendant subsequently violates a "statutory, regulatory, or contractual requirement" and makes a claim for payment after such violation. See Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 1999-2001 (2016) (validating the "implied false certification theory" as applied to defendants who make a misleading representation about the services and goods they are providing in their claim of payment).

In this case, Fields has produced no evidence showing that Bi-State made 1) any claims for payment or 2) any certification of compliance with the Uniform Relocation Act during or after its purchase of the Meridian in 2010. Such evidence is necessary to demonstrate liability under either the "express" or "implied" false certification theories. As a result, Bi-State is entitled to judgment on Fields' Uniform Relocation Act-related claims.

Additionally, Fields submits no admissible evidence showing that Bi-State made claims for payment during or after the time that it allegedly violated the Hatch Act. Fields states in his complaint that he was ordered to volunteer for political campaigns that were meant to benefit Bi-State. (No. 27 at 4). He also claims that he was coerced and compelled by Metro's Senior VP Engineering to solicit campaign contributions for County Executive Charlie Dooley. (Id. at 5).[3] Fields cannot rest on his pleadings alone, Celotext Corp. v. Catrett, 477 U.S. 317,

---

[3] Fields submits a sworn affidavits, but does not repeat these claims in his affidavit, and he does not submit any deposition testimony that he made under oath.

324, and he does not provide <u>any</u> evidence that he actually was coerced in this way or ordered to volunteer for political campaigns. Fields submits an affidavit, signed by him, stating various additional Hatch Act violations. (No. 222-1 at 3-5). However, he makes these statements without demonstrating any personal knowledge of their contents. (<u>See</u>, <u>e.g.</u>, <u>id</u>. at 3-4 ("Examples of the violations include: a. Loaning out the Senior V.P. of Government Affairs to the Proposition A campaign. b. Using campaign contributions as a selection factor for hiring the $5.9M Vandeventer Bridge replacement team in 2009, . . .")).

More importantly, Fields does not provide any dates for these alleged violations of the Hatch Act. It appears that many, if not all, of these alleged actions took place after the time when Bi-State allegedly made false certifications to obtain ARRA, CMAQ, and § 5307 funds between 2006 and 2009. When considering all of these materials, Fields has not presented admissible evidence to demonstrate that any Hatch Act violations occurred before the time when Bi-State allegedly made false certifications to the federal government. Fields has not produced sufficient evidence to support the essential elements on which he bears the burden of proof. <u>Celotext Corp. v. Catrett</u>, 477 U.S. 317, 324.

As a result, there is no issue of material fact in this case and Bi-State is entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** Bi-State's motion for summary judgment, [No. 207], is **GRANTED**. Fields' claims are **DISMISSED** with prejudice. An appropriate judgment will accompany this Memorandum and Order.

                                                                   /s/ Rodney W. Sippel
                                                                   RODNEY W. SIPPEL
                                                                   UNITED STATES DISTRICT JUDGE

Dated this 14th day of November, 2018.