UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Eric Fields, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:14 CV 1321 RWS ) |
| THE BI-STATE DEVELOPMENT AGENCY OF THE MISSOURI-ILLINOIS METROPOLITAN DISTRICT, et al., | ) ) ) ) ) |
| Defendants. | ) ) |

# **MEMORANDUM & ORDER**

Plaintiff-Relator Eric Fields moves for an altered or amended judgment of my order granting summary judgment to Defendant Bi-State in this False Claims Act Cas. [No. 230]. Fields does not identify a manifest error of law or fact that would have created a dispute of material fact. As a result, I will deny Field's motion for an amended judgment.

## **BACKGROUND**

Fields is a former employee of Defendant Bi-State Development Agency ("Bi-State") who claims that former CEO of Bi-State, Bob Bear, directed employees to participate in partisan campaigns and instituted a "pay to play" scheme in violation of the Hatch Act. Fields also claims that Defendant Bi-State

violated the Uniform Relocation Act by purchasing interest in the Meridian Parking Garage without appraising the property first. Based on these two underlying violations, Fields alleges that Bi-State submitted a false claim for payment to the federal government, in violation of the False Claims Act.

Bi-State filed three successive motions for summary judgment in this case. I denied these motions, and Bi-State appealed both denials. U.S. ex rel. Fields v. Bi-State Dev. Agency of the Missouri-Illinois Metro. Dist., No. 4:14 CV 1321 RWS, 2015 WL 5158398, at *15 (E.D. Mo. Sept. 2, 2015); 2016 WL 4944097, at *3 (E.D. Mo. Sept. 16, 2016). The Eighth Circuit dismissed the first appeal for lack of jurisdiction, 829 F.3d 598, and affirmed my second ruling. 872 F.3d 872 (8th Cir. 2017), cert. denied sub nom., 138 S. Ct. 677, (2018).

I granted Bi-State's third motion for summary judgment, [No. 207], because Fields did not provide evidence to demonstrate a dispute of material fact concerning the existing and timing of Hatch Act or Uniform Relocation Act violations. [No. 226]. In his response in opposition to summary judgment, [No. 221], and first amended complaint, [No. 27], Fields did not cite any evidence other than a self-serving affidavit, and he did not provide dates for the alleged Hatch Act violations. The first amended complaint alleges that the Uniform Relocation Act violations occurred between May and December 2010. [No. 27 at

¶¶ 50-55]. Bi-State allegedly made false certifications to obtain federal funds between 2006 and 2009. (No. 221 at 10-11).

Fields now moves pursuant to Rule 59(e) for an altered or amended judgment. He argues that I ignored Eighth Circuit precedent in <u>Baycol Prods Litig. V. Bayer Healthcare</u>, 732 F.3d 869 (8th Cir 2013), and that the evidence presented in his affidavit created a dispute of material fact. This motion is fully briefed.

## LEGAL STANDARD

"Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.' " <u>United States v. Metro. St. Louis Sewer Dist.</u>, 440 F.3d 930, 933 (8th Cir. 2006) (quoting <u>Innovative Home Health Care v. P. T.-O. T. Assoc. of the Black Hills</u>, 141 F.3d 1284, 1286 (8th Cir.1998)). A litigant cannot use Rule 59(e) motions "to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." <u>Id.</u> (quoting <u>Innovative Home Health Care</u>, 141 F.3d 1284, 1286). As I stated in my challenged order, summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Lynn v. Deaconess Med. Ctr.</u>, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of identifying the

basis of its motion and those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotext Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party makes and supports such a motion, the nonmoving party may not rest on his pleadings. Id. at 324. Instead, the nonmoving party must produce enough evidence to support the essential elements on which he bears the burden of proof. Id. at 324.

## ANALYSIS

Fields presents two primary theories in support of his motion including (1) that I made manifest errors of law by failing to apply "fraud-in-the-inducement" liability explained in Baycol Prods Litig. V. Bayer Healthcare, 732 F.3d 869, and (2) that I erred in finding that Fields presented no evidence that Bi-State violated the Hatch Act or Relocation Act before making false certifications to the federal government.

### I. Fraud-in-the-Inducement

The general elements of a False Claims Act case are "that (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp., 690 F.3d 951, 955 (8th Cir. 2012). The knowledge requirement can be met if a defendant acts with "actual knowledge,"

4

"deliberate indifference," or "reckless disregard" of the truth. 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). The false or fraudulent requirement can be met when a defendant "certifie[d] compliance with a statute or regulation as a condition to government payment," yet had knowingly failed to comply with such statute or regulation. U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc., 543 F.3d 1211, 1217-18 (10th Cir. 2008) (citing Shaw v. AAA Eng'g & Drafting, Inc., 213 F.3d 519, 531 (10th Cir. 2000). This certification of compliance can be express or implied. Id; Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 1999 (2016). Specifically, implied false certification liability can arise if omissions of "statutory, regulatory, or contractual requirements . . . render the defendant's representations misleading with respect to the goods or services provided." Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 1999.

Liability under both express and implied false certification depends on relative timing. A False Claims Act Defendant cannot omit a violation that has not happened, or about which they do not know. And Fields presents no cases in which False Claims Act liability arose because of statements that were made false by future events.

Instead, Fields argues that I have ignored fraud-in-the-inducement liability, as described in In re Baycol Prod. Litig., 732 F.3d 869, 876. Fraud in the inducement applies when (1) a contract is induced by fraud and (2) later claims for

5

payment are submitted under the same contract. Id. Fields has presented no facts to demonstrate that the underlying federal grants Bi-State received between 2006 and 2009 were induced by fraud. As a result, I did not err in "ignoring" Fields' fraud-in-the-inducement theories. He presented no evidence to show that this theory applied to his circumstances.

Relatedly, Fields argues that Bi-State violated the "Standard Assurances and Penalties" clauses contained in certain certifications and assurances. Fields quotes a section of the Standard Assurances clause that states "[t]he applicant agrees that it is under a continuing obligation to comply with the terms and conditions of the grant agreement or cooperative agreement with FTA issued for its project." [Memorandum in support of plaintiff's motion to amend judgment, ECF No. 23 at 11]. Similarly, the Penalties Clause merely states Bi-State can be penalized for any false, fictious or fraudulent claims. These provisions in the Certifications and Assurances cannot broaden False Claims Act liability beyond the meaning of the statute. Further, these statements cannot constitute a half-truth because they only state (1) that Bi-State is under a continuing obligation to comply, and (2) what the penalties will be for false statements. Again, Bi-State cannot omit a future violation that it does not know about. As a result, Fields does not show that the Standard Assurances and Penalty clauses create an issue of material fact precluding summary judgment.

## II. Evidence Concerning the Timing of Hatch Act and Relocation Act Violations

Fields other arguments concern whether he provided enough evidence to create a dispute of material fact about the timing of Hatch Act and Relocation Act violations.

First, Fields argues that I materially relied upon the absence of deposition evidence, despite ordering that "only two depositions be taken . . . and den[ying] further discovery." [ECF No. 23 at 5]. According to Fields, he did not have adequate time to conduct discovery.

Fields arguments are misplaced and his facts are incorrect. The parties had a collective 18 months to conduct discovery[1], over which the parties litigated several motions to compel, two of which I granted. Additionally, I did not limit the number of depositions that Fields could take of Bi-State's witnesses, nor did I deny discovery otherwise between Bi-State and Fields during the time in question. In my February 9, 2018 order, I granted Fields motion to compel, ordering Eager Road to make one of its officers and an appraiser available for depositions. [No. 178]. In the same order, I limited discovery between Eager Road and Fields. Id. However, nothing in my order purported to limit discovery between Bi-State and Fields. Id.

---

[1] Discovery was available to parties between February 27, 2015 and October 12, 2015, between August 23, 2017 and November 6, 2017, and between January 8, 2018 and August 21, 2018.

As a result, I did not err in granting summary judgment based on a lack of time for discovery.

Second, Fields argues that he demonstrated personal knowledge of Hatch Act violations through an affidavit and exhibits, and that these documents provide "sufficient indicia of reliability and set[] forth numerous representative examples of false claims." [ECF No. 120 at 7].

I granted summary judgment in this case in part because Fields had not presented <u>any</u> evidence that he was coerced by Bi-State to solicit campaign contributions. Additionally, Fields did not demonstrate any personal knowledge of the other evidence he offered in support of alleged Hatch Act violations. In his statement of facts opposing summary judgment, Fields cited exclusively to a self-serving affidavit he submitted. That affidavit repeated, verbatim, a series of 10 subparagraphs allegedly showing Hatch Act violations. Fields presented these subparagraphs without demonstrating any personal knowledge of their contents. (<u>See</u>, ECF No. 222-1 at 3-5 ("Examples of the violations include: a. Loaning out the Senior V.P. of Government Affairs to the Proposition A campaign. b. Using campaign contributions as a selection factor for hiring the $5.9M Vandeventer Bridge replacement team in 2009, . . .")).

"[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." <u>Frevert v. Ford Motor Co.</u>, 614 F.3d 466, 473–74 (8th Cir.

2010) (quoting Bacon v. Hennepin County Med. Ctr., 550 F.3d 711, 716 (8th Cir.2008)). Relatedly, "[a] plaintiff . . . must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005). Fields correctly notes that his counsel need not "depose [his] own witnesses," nor produce evidence in a form admissible at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324. However, any party seeking to survive summary judgment must produce enough probative evidence to demonstrate a material fact at issue. Fields self-serving affidavit—made without personal knowledge, and repeated verbatim in his statement of facts without reference to other underlying evidence—did not demonstrate a material fact at issue.

Fields may have met this burden if he had cited to exhibits in his statement of facts. He did not. Instead, Fields cited exhibits in his affidavit, without page number or other helpful identifiers. His affidavit in turn was cited in his statement of facts, which was cited in his memorandum in opposition. It is not my "responsibility 'to conduct a fishing expedition of plaintiff's affidavit or any other record evidence in order to support the assertions made in [his] response.' " Coleman v. Blue Cross Blue Shield of Kansas, Inc., 287 F. App'x 631, 635 (10th Cir. 2008) (quoting Coleman v. Blue Cross Blue Shield of Kan., 487 F. Supp. 2d 1225, 1237 (D. Kan. 2007)). Fields, as much as any other litigant must follow the

9

Local Rules and set forth matters in dispute "with specific references to portions of the record, where available, upon which the opposing party relies." Local Rule 7 - 4.01. After Bi-State supported its motion for summary judgment, Fields failed to cite any probative evidence—in either his statement of facts or his memorandum in opposition—beyond his self-serving affidavit. As a result, I did not err in granting summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** Fields motion for an altered or amended judgment, [No. 229], is **DENIED.**

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of July, 2019.